# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JUSTIN J. ALLEE,** ) | |
| ) | |
| Plaintiff, ) | Case No. 7:21CV00084 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **J. C. STREEVAL, ET AL.,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendants. ) | |

*Justin J. Allee, Pro Se Petitioner; Krista C. Frith, Assistant United States Attorney, Roanoke, Virginia, for Defendants.*

The plaintiff, Justin J. Allee, a federal inmate proceeding pro se, filed this civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In this case, he sues federal prison officials for retaliating against him for complaining about prison procedures and restrictions related to COVID-19, allegedly in violation of his constitutional rights. After review of the record, I conclude that the claims in this case must be dismissed as to all defendants.

## I.  BACKGROUND.

Allee initially filed two cases, No. 7:21CV00084 and No. 7:22CV00088. The court issued an order in November 2021, notifying Allee that his claims in both cases were conclusory and misjoined and granting him an opportunity to file an amended

pleading in each case, making a clear statement of only properly joined claims. Allee filed one amended pleading in both cases. The court then severed his claims into multiple civil actions to correct misjoinder. Only two claims remain before me in this case: Claims 1 and 2 of Allee's Second Amended Complaint.

Allee alleges the following sequence of events on which he bases these two *Bivens* claims in this case. On August 28, 2020, while Allee was confined at the United States Penitentiary in Lee County, Virginia (USP Lee), he emailed Warden Streeval, complaining about "his created policies and customs that were not in accordance with CDC [Center for Disease Control] guidelines." Am. Compl. 5, ECF No. 12.[1] Five hours later, allegedly in retaliation for the email, Captain Kemmerer, Officer Bradburn, and other officers came to Allee's cell, separated Allee and his cellmate, placed them in showers, "strip[ped] them naked before the whole unit," and "proceeded to trash [Allee's] room, throwing all of his property away -- legal briefs, drafts, filings (all of which w[ere] going to further his initial informal complaint to the Warden about not following CDC guidelines)." *Id.* Officer Bradburn allegedly screamed threats about putting Allee in the Special Housing Unit (SHU) "where he could deal with a non-compliant inmate." *Id.*

---

[1] For the sake of consistency, page numbers in citations to the record refer to the page numbers assigned by the court's electronic filing system.

In a separate, related claim, Allee alleges that Streeval failed to follow CDC guidelines during the COVID pandemic. Specifically, Allee points to restrictions on inmates' living conditions: locking "all prisoners (but a select few) in their cells, sometimes for 23 hours, with no recreation (physical, mental or spiritual (religious) outlets[)]; with little to no real communication; will [sic] little access to programming"; failing to keep infected staff away from inmates or to mandate that staff wear "[Personal Protective Equipment (PPE,)]"; and after testing began for COVID, ordering two prison-wide security searches, but without requiring staff to wear PPE while searching inmates or their cells. *Id*. at 7. Allee's requests for PPE for himself were allegedly "met with threats of violence, loss of property, [and] the taking of entire unit privileges (recreation, commissary, T.V.s)." *Id.* Inmates who asked for PPE were also allegedly placed

> in cuffs, solitary confinement, four-pointed by chaines [sic]; the water temperature was either too hot or too cold, regulated by staff with intent of retaliation for raising issues; staff would not regularly empty trash from cells; staff plugged the big industrial fans in to then intentionally spread the virus all the more so.

*Id.*

Allee's operative pleading in this case names as defendants nineteen present or former Federal Bureau of Prison (BOP) administrators and officials from USP Lee. An Assistant United States Attorney has filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment, in this case as to Claims 1 and 2 on

behalf of the defendants whom she currently represents: M. Carvajal, J. Allen, R. Bradburn, M. Frazier, H. Goldey, W. Hicks, C. Kemmerer, M. Kemmerer, S. Kenyon, A. Lafave, N. Mollica-Hicks, J. Petrucci, J. Streeval, Mrs. A. White, and Michael Horowitz.[2] Allee has responded to the motion. Thus, I find that motion to be ripe for consideration.

At the time the AUSA filed the Motion to Dismiss, she did not represent defendants Robbins (also listed in Allee's pleadings as J. Robbins or Mr. Robgbins), Mrs. Saylors, T. Thomas, or Mr. White (now identified as Skylar White). Yet, for the reasons discussed herein, Allee has not stated any actionable *Bivens* claim against any defendant in this case. Therefore, while I will grant the Motion to Dismiss under Rule 12(b)(6) as to claims against the movant defendants listed above, I will also summarily dismiss all claims against Robbins, Saylors, Thomas, and Skylar White under 28 U.S.C. § 1915A(b)(1).

II. Discussion.

A. Dismissal under Rule 12(b)(6).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint to determine whether the plaintiff

---

[2] The defendants' pleadings and responses provide first initials and correct spelling of last names that differ slightly, as compared to Allee's list of defendants in his submissions. In the Order, I will ask the Clerk to amend the docket to make these additions and corrections.

has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true.  To state an actionable claim, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

In *Bivens*, the Supreme Court recognized an implied damages remedy against federal officers for violations of the plaintiff's constitutional rights.  403 U.S. at 397.  Liberally construed, Allee's Claims 1 and 2 allege the following violations of his constitutional rights: (a) on August 28, 2020, Captain Kemmerer, Officer Bradburn, and others retaliated against Allee for his email to the warden by leaving Allee naked in a shower, throwing away property and legal materials, and threatening him with segregated confinement; (b) officers threw away legal briefs and documents intended to support Allee's grievance, in violation of his right to seek governmental redress; (c) Bradburn made verbal threats against Allee in violation of the Eighth Amendment; and (d) Warden Streeval ignored or imposed hazardous or overly restrictive living conditions in the fall of 2020, in violation of guidelines issued by the CDC and the Eighth Amendment.

B.  Limitations on *Bivens* Claims.

The *Bivens* decision allowed a plaintiff to sue federal officers for damages for alleged Fourth Amendment violations related to a warrantless search and arrest.  403 U.S. at 397.  The Supreme Court has explicitly recognized only two other claims actionable under the *Bivens* rubric: *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing Eighth Amendment claim based on failure to address serious medical condition); *Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a Fifth Amendment claim based on sex discrimination).  Otherwise, the Supreme Court has rejected attempts to expand the *Bivens* remedy to cover other alleged constitutional violations.  *Hernandez v. Mesa*, 140 S. Ct. 735 (2020) (finding no *Bivens* remedy for cross-border shooting by federal officer); *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) (finding *Bivens* remedy not available in action seeking damages following government hold-until-cleared order detaining illegal aliens following 9-11 attack).

While the *Bivens* remedy still exists, extending that remedy to cover additional types of claims is "a disfavored judicial activity."[3]  *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022).  When reviewing a potential *Bivens* claim, a court must (a) determine whether the proposed claim is an extension of one of the three recognized claims such that it arises in a new context; and (b) if so, determine if

---

[3] I have omitted citations, internal alterations, and quotation marks here and throughout this Opinion and Order, unless otherwise noted.

special factors exist that counsel hesitation to grant the extension. *Ziglar*, 137 S. Ct. at 1857–58. In considering an expansion of *Bivens*, "the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is 'Congress' — as it will be in most every case, — no *Bivens* action may lie." *Egbert*, 142 S. Ct. at 1803.

### 1. Retaliation.

It is now established that "there is no *Bivens* cause of action for [a] First Amendment retaliation claim." *Id.* at 1807. In that decision, the Court directed that courts

> may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure. If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action. Importantly, the relevant question is not whether a *Bivens* action would disrupt a remedial scheme, or whether the court should provide for a wrong that would otherwise go unredressed. Nor does it matter that existing remedies do not provide complete relief. Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.

*Id.* at 1804.

Allee's first claim in this case alleges that the defendants took adverse actions to retaliate against him for exercising his First Amendment right by complaining about prison conditions, namely, the prison's procedures and restrictions related to COVID-19. Allee had available prison administrative remedies and indeed alleges

that he has exhausted such remedies. Second Am. Compl. 1, ECF No. 12. Moreover, I cannot find that this court is better equipped to determine the appropriateness of an extension of the *Bivens* remedy in the retaliation context than are the political branches of our government, such as Congress or the BOP. Pursuant to *Egbert*, I find that the *Bivens* remedy does not extend to Allee's allegations of officials' retaliation on August 28, 2020, at USP Lee. I will, therefore, dismiss Allee's retaliation claims as to all defendants in this case.

### 2. *Conditions of Confinement*.

Allee complains about the living conditions imposed on USP Lee inmates in 2020 as part of the effort to minimize the spread of the COVID-19 virus. He also complains about being locked in a shower, naked, while officers searched his cell. Applying the analysis and holding of *Egbert*, the Fourth Circuit has held that claims alleging unconstitutional prison conditions constitute an extension of the *Bivens* remedy and that any decision regarding such an extension appropriately lies with the political branches of government, not the courts. *Tate v. Harmon*, 54 F.4th 839, 845-48 (4th Cir. 2022). The court in *Tate* characterized conditions claims as "seek[ing] to impose liability on prison officials on a systemic level, implicating the day-to-day operations of prisons, affecting the scope of the officials' responsibilities and duties, and implicating policy, administrative, and economic decisions." *Id.* at 848.

Similarly, Allee's conditions claims seek to impose financial liability by prison officials based on the efforts they took to protect inmates and staff during a global pandemic that sent administrators around the world scrambling for evolving information and effective measures to minimize infections. Or conditions to which they subjected him during a cell search while the prison was under COVID-19-related restrictions. Under such circumstances, I find it clear that Allee's criticisms of USP Lee's measures to combat COVID-19 would open a new context for the *Bivens* remedy. *Id.* I also find it self-evident that the political branches — Congress and executive agencies like the BOP — are "better equipped" than the courts to determine any extension of *Bivens* to allow damage suits based on prison officials' decisions regarding policy measures designed to address COVID-19 concerns. *Id.* I will dismiss Allee's purported *Bivens* claims alleging that the conditions USP Lee officials imposed in response to COVID-19 violated Allee's constitutional rights.[4]

### 3. Other Constitutional Claims Insufficient.

The remainder of Allee's attempted claims in this case fail under constitutional standards, regardless of whether the *Bivens* remedy could extend to

---

[4] Allee faults USP Lee COVID-19 measures specifically because in unspecified ways, they allegedly did not follow guidelines issued by the CDC, or because USP Lee officers allegedly did not always precisely comply with such guidelines. I find no authority granting inmates a personal cause of action to sue prison officials for such omissions related to CDC guidelines or that inmates have any constitutional right for prison officials to comply such guidelines.

cover them. A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983 for alleged violations of constitutional rights, and therefore, much caselaw involving § 1983 claims is applicable in *Bivens* actions. *Farmer v. Brennan*, 511 U.S. 825, 839-47 (1994).

Allee apparently complains that by trashing documents that he intended as support for his grievance about COVID conditions, officers hampered his ability to seek governmental redress through the grievance procedure. Even if Allee could prove this allegation, he would have no viable constitutional claim. "[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 [or *Bivens*] claim alleging denial of a specific grievance process." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Therefore, I will dismiss Allee's claims that the officers' actions interfered with his right to file a prison grievance.

Finally, Allee complains that officers made verbal threats against him during the incident. Allegations of verbal abuse and harassment by guards, without more, do not state any constitutional claim. *Henslee v. Lewis*, 153 Fed. App'x 178, 180 (4th Cir. 2005) (unpublished) (citing *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)). Thus, I will dismiss Allee's claim regarding officers' threats.

### III. CONCLUSION.

For the reasons stated in this Opinion, it is **ORDERED** as follows:

1. The Clerk is directed to amend the docket to add defendants' first names or initials as provided below; to change defendant N. Mollica to N. Mollica-Hicks; and to change defendant J. C. Petrucii to J. Petrucci;

2. The Motion to Dismiss, ECF No. 39, filed on behalf of defendants M. Carvajal, J. Allen, R. Bradburn, M. Frazier, H. Goldey, W. Hicks, C. Kemmerer, M. Kemmerer, S. Kenyon, A. Lafave, N. Mollica-Hicks, J. Petrucci, J. Streeval, Mrs. A. White, and Michael Horowitz, is GRANTED; and

3. All claims against the following defendants are DISMISSED without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1): Robbins, Saylors, Thomas, and Skylar White.

A separate Judgment will issue herewith.

ENTER: March 27, 2023

/s/  JAMES P. JONES
Senior United States District Judge